## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF LOUISIANA

IN RE:

**KASEY HICKS**                                                     **CASE NO. 23-10289**
**DEBTOR**                                                          **CHAPTER 7**


**GABRIEL RINCON**
**ANGELA RINCON**
**PLAINTIFF**

**VERSUS**                                                          **ADVERSARY NO. 23-1014**

**KASEY HICKS**
**DEFENDANT**


## MEMORANDUM OPINION

On August 1, 2024, trial on two related matters came before the court: first, the Objection to Claim 6 of Gabriel and Angela Rincon[1] (collectively "the Rincons") filed by the debtor, Kasey Hicks ("Mr. Hicks") in his main case, and second, the Rincons' adversary proceeding alleging that Mr. Hicks committed fraud sufficient to except their debt from discharge.

### I.  Jurisdiction, Venue, and Core Status

This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The matter constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (I). To the extent any of these issues are non-core in nature, including rendering a money judgment on a state law claim for damages, the parties have consented to the court entering a final judgment.[2]

---

[1] Case no. 23-10289, P-60.

[2] Joint Stipulation filed May 22, 2024, Adv. no. 23-1014, P-35; Order dated May 23, 2024, Adv. no. 23-1014, P-36.

## II. Background and Procedural History

The Rincons were long-time homeowners who desired to undertake an extensive remodel/addition project to their home back in 2021. Seeking recommendations, they were introduced to Mr. Hicks by a mutual friend, a local realtor. Mr. Hicks, through his d/b/a Buildright Contracting ("Buildright"),[3] submitted an estimate to the Rincons on August 22, 2021, for Mr. Hicks to do work on the exterior of their home. The original scope focused mainly on construction of a screened porch with outdoor kitchen, as well as drainage in their yard. Although the estimate was unsigned, the parties agreed that it was their original agreement ("Original Contract").[4]

The total price of the Original Contract was $50,200. The Rincons paid Mr. Hicks a $5,000 deposit, and he asked for draws as needed after that time. Complicating matters significantly, the Rincons made several changes and additions to the original scope of work, causing the price to rise over $100,000. The project was still on-going one year later. The Rincons eventually became unhappy with Mr. Hicks' work and terminated him in August 2022.

The Rincons filed suit against Mr. Hicks on October 13, 2022, in the 19th Judicial District Court, Parish of East Baton Rouge, Case no. C-724637 ("State Court Suit"). Mr. Hicks filed a chapter 7 bankruptcy case on May 8, 2023, which served to stay the State Court Suit.[5]

---

[3] The estimate itself, Rincons Exh. 1, does not reflect that Buildright is a separate legal entity, and no evidence was adduced at trial suggesting anything other than the fact that Mr. Hicks was "doing business as" Buildright.

[4] Rincon Exh. 1.

[5] Case no. 23-10289.

On August 14, 2023, the Rincons filed a complaint in this court objecting to the dischargeability of the debt allegedly owed them by Mr. Hicks pursuant to 11 U.S.C. §§ 523 (a)(2)(A) and (a)(6).  The Rincons ultimately abandoned their cause of action under § 523(a)(6).

The Rincons also filed proof of claim 6-1, asserting an unsecured claim against Mr. Hicks in the amount of $142,366.[6]  Based on an earlier order stemming from a discovery dispute,[7] the monetary damages the Rincons seek are limited to $124,949.96.  On May 22, 2024, the Rincons amended their claim to reduce it to $124,949.96 in accordance with the ruling and attached supporting documentation for their claim.[8]  This reduced number is itemized in Gabriel Rincon's Affidavit of Correctness ("Affidavit") submitted in connection with the Rincons' Motion for Default Judgment in the State Court Suit and is also attached to the Rincons' amended proof of claim.[9]  Mr. Hicks objected to the Rincons' claim, as amended.[10]

## III.  Objection to Claim and Choice of Law

The Rincons seek a total damage claim of $124,949.96, plus statutory attorneys' fees for fraud under Louisiana law.  The foundation of the fraud claim is based on allegations that (1) Mr. Hicks was unlicensed (undisputed), (2) he misrepresented that fact at the outset of the contractual

---

[6] The Rincons filed their claim on December 1, 2023, a little over two weeks after the November 13, 2023, deadline, despite receiving proper notice of the deadline. Case no. 23-10289, P-22, 25.  In a chapter 7 case, claims are not disallowed for tardiness.  When a creditor had notice of the deadline, its tardily filed claim is subordinated to timely filed claims. 11 U.S.C. § 726(a)(3). The practical result of this tardiness in most cases is the claimant does not receive a distribution from the trustee during the administration of the case.  The claim would, however, prime the debtor with respect to entitlement to any distribution from the trustee.

[7] Order dated May 2, 2024, Adv. no. 23-1014, P-24.

[8] Proof of Claim 6-2.

[9] Rincon Exh. 10-C.

[10] Case no. 23-10289, P-60.

relationship and several times thereafter, and (3) the Rincons would not have chosen him as their contractor had he been truthful with them about his lack of a contractor's license. [11]

The claim arises from both the Original Contract and the change orders. The Original Contract has no choice of law provision. The court found in *ASARCO LLC v. Americas Min. Corp.*,[12] that "bankruptcy courts … apply choice-of-law rules of the forum in which they sit over state-law claims that do not implicate federal policy."[13] La. C.C. art. 3537 provides that "an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." The contract was entered into in Louisiana between Louisiana residents and affects Louisiana property. Therefore, Louisiana law applies.

### A. Burden of Proof

F.R.B.P. 3001(f) provides, "A proof of claim executed and filed in accordance with [the Bankruptcy] rules shall constitute prima facie evidence of the validity and amount of the claim." In *Simmons v. Savell*,[14] the Fifth Circuit held that the party objecting to a properly filed proof of claim carries the burden of supporting its objection with "evidence tending to defeat the claim that is of a probative force equal to that of the creditor's proof of claim."[15] The United States

---

[11] About one month after the Rincons terminated Mr. Hicks, Mr. Hicks obtained a contractor's license under the name Maxx Designs, LLC. Rincon Exh. 3.

[12] *ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49 (S.D. Tex. 2007), *on recon. in part sub nom., ASARCO LLC v. Americas Mining Corp.,* 396 B.R. 278 (S.D. Tex. 2008).

[13] *ASARCO*, 382 B.R. at 60-61 (citing *Woods–Tucker Leasing Corp. of Ga. v. Hutcheson–Ingram Dev. Co.,* 642 F.2d 744, 748 (5th Cir.1981); *In re Gaston & Snow,* 243 F.3d 599, 605 (2d Cir.2001); *In re Merritt Dredging Co., Inc.,* 839 F.2d 203, 206 (4th Cir.1988); *In re Southwest Equip. Rental, Inc.,* No. Civ. 1–90–62, 1992 WL 684872, at *9 (E.D. Tenn. July 9, 1992); *Warfield v. Carnie,* No. 3:04–cv–633–R, 2007 WL 1112591, at *7 (N.D. Tex. Apr.13, 2007)).

[14] *Simmons v. Savell (In re Simmons)*, 765 F.2d 547 (5th Cir. 1985).

[15] *Simmons*, 765 F.2d at 552.

Supreme Court held in *Raleigh v. Illinois Dept. of Revenue*[16] that the ultimate burden of proof lies with the party who would bear the burden of proof under substantive law.  Thus, if the objection to claim sufficiently rebuts the presumption of prima facie validity, the burden of proof shifts to the party who would bear the burden under relevant substantive law to prove their claim by a preponderance of evidence.[17]

The Rincons' proof of claim is on the national form and contains supporting documentation.  The court finds it was properly filed in accordance with the Bankruptcy Rules and therefore, constitutes prima facie evidence of both the validity and amount owed.

In Mr. Hicks' Objection to Claim,[18] he "avers that the components of the total claim are completely erroneous in part, and greatly overstated in part," without providing any support.  Because his objection, as filed, did not provide support of a probative force equal to that of the Rincons' proof of claim, Mr. Hicks bore the initial burden of proof at trial.  However, after Mr. Hicks' direct testimony, the court ruled in open court that he had met his low-threshold burden of rebutting the claim's prima facie validity.  The ultimate burden then shifted to the Rincons to prove the validity and amount of their claim by a preponderance of evidence.

### B. Validity of the Original Contract

Neither Mr. Hicks nor Buildright was licensed as a contractor in Louisiana at any time while working for the Rincons.[19]  Both Mr. and Mrs. Rincon testified that they asked Mr. Hicks

---

[16] *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 120 S. Ct. 1951, 147 L. Ed. 2d 13 (2000).

[17] *Matter of Fid. Holding Co., Ltd.,* 837 F.2d 696, 698 (5th Cir. 1988) (quoting *In re WHET, Inc.,* 33 B.R. 424, 437 (D.Mass.1983) ("If, however, evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to 'prove the validity of the claim by a preponderance of the evidence.'")).

[18] Case no. 23-10289, P-60.

[19] Letter from the Louisiana State Licensing Board for Contractors dated April 2, 2024, Rincon Exh. 3.

whether he was a licensed contractor and that he responded affirmatively.  Mrs. Rincon testified

that she asked Mr. Hicks several times for his license number, but he continuously made excuses

for not providing it to her.  Mrs. Rincon contemporaneously made notes consistent with her

testimony.[20]

At the time the Rincons and Mr. Hicks entered into their Original Contract and when their

change orders increased the amount of the project, Louisiana R.S. 37:2150, *et seq*., required

persons doing home improvement projects of between $7,500 and $75,000 to be licensed home

improvement contractors and that any party contracting to do residential construction over

$75,000 have a residential contractor's license.[21]  The cost of the Rincons' project was originally

$50,200, but it more than tripled due to changes and additions the Rincons requested.  Therefore,

Mr. Hicks was required by Louisiana law to hold a home improvement license at the outset of the

project and a residential construction license when the change orders increased the project over

$75,000.

In *Trade-Winds Env't Restoration, Inc. v. Stewart Dev. Liab. Co.,*[22] the Fifth Circuit

discussed the legal repercussions of an unlicensed contractor entering a construction contract; it

held:

> Under Louisiana law, it is "unlawful for any person to engage in or continue in
> this state in the business of contracting, or to act as a contractor as defined in this
> Chapter, unless he holds an active license as a contractor under the provisions of
> this Chapter." La.Rev.Stat. § 37:2160 A(1). … Louisiana courts have long
> recognized that a contracting agreement entered into without the benefit of a
> contractor's license is null and void. *See, e.g., Hagberg v. John Bailey Contractor,*
> 435 So.2d 580, 584–85 (La.App. 3 Cir.1983); *Alonzo v. Chifici,* 526 So.2d 237,
> 243 (La.App. 5 Cir.1988); *see also* La. Civ.Code art. 2030 ("A contract is

---

[20] Rincon Exh. 8, pp. 370, 374.

[21] La. R.S. 37:2150.1(8) and (15). Effective August 1, 2024, residential licenses are required for residential projects over $50,000.

[22] *Trade-Winds Env't Restoration, Inc. v. Stewart Dev. Liab. Co.,* 409 F. App'x 805, 807 (5th Cir. 2011).

absolutely null when it violates a rule of public order, as when the object of the contract is illicit or immoral."). …[23]

Because Mr. Hicks was not licensed, the Original Contract is null and void.  In *Robinson v. Papania*,[24] the court discussed how this affects the homeowner:

> An absolutely null contract is deemed to never have existed. La. C.C. art. 2033.[25] Therefore, an absolutely null contract is unenforceable, and a party to such cannot assert a cause of action for breach of the absolutely null contract. *See "We the People" Paralegal Services, L.L.C. v. Watley,* 33,480 (La. App. 2 Cir. 8/25/00), 766 So.2d 744, 749; *Jones v. Chevalier,* 579 So.2d 1217, 1218 (La. App. 3 Cir. 1991); *Williams v. Enmon,* 380 So.2d 144, 146 (La. App. 1 Cir. 1979), *writ denied,* 383 So.2d 12 (La. 1980) (finding no rights can flow to either party from a null and void contract). … Although an absolutely null contract is deemed never to have existed, La. C.C. art. 2033 requires that the parties be restored to the situation that existed before the contract was made, if such is possible. If it is impossible or impractical to make restoration in kind, restoration may be made by an award of damages. *See* La. C.C. art. 2033.

A portion of the Rincons' claim is for services or materials that were part of the Original Contract but were neither paid for nor provided.  Because the Original Contract is unenforceable, the Rincons have no breach of contract claim against Mr. Hicks.[26]  Therefore, the Rincons' claim is disallowed in part as to the following items from the Affidavit, totaling $10,910:

5.8    Concrete fire pit with gas line - $3,500;

---

[23] *Id*. at 807-08.

[24] *Robinson v. Papania*, 2022-1010 (La. App. 1 Cir. 3/6/23), 368 So. 3d 74, 78, *writ denied*, 2023-00488 (La. 5/23/23), 360 So. 3d 1262.

[25] La. C.C. art. 2033 provides in pertinent part:

> An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages.

[26] The court notes that Louisiana law limits "the recovery of unlicensed contractors to the actual costs of their materials, services, and labor in the absence of a contract or in the case of a null contract, with no allowance for profit or overhead." *Quaternary Res. Investigations, LLC v. Phillips*, 2018-1543 (La. App. 1 Cir. 11/19/20), 316 So. 3d 448, 463, *writ denied,* 2020-01450 (La. 3/2/21), 311 So. 3d 1059 (citing *Boxwell v. Dep't of Highways*, 203 La. 760, 14 So. 2d 627 (1943); *Villars v. Edwards*, 412 So. 2d 122, 125 (La. App. 1st Cir.), *writ denied*, 415 So. 2d 945 (La. 1982)).  However, the Rincons have not asked for Mr. Hicks to disgorge any funds he has received for profit or overhead.

5.9        Trellis - $300;

5.10       Planters - $400;

5.11       Flowers and shrubs - $460;

5.12       Fan[27] - $1,000;

5.13       Track lights[28] - $250;

5.14       Turf grass[29] - $3,000;

5.16       Landscape lights[30] - $1,500;

10.2       Final exterior doors[31] - $500.

The Rincons orally withdrew the following portion of their claim at the hearing, totaling

$5,580:

5.7        Cleaning out trees from front yard - $2,000; and

---

[27] The Rincons maintain that it was part of the original scope of work in the Original Contract. Mr. Hicks testified that he did not buy the fan and was not paid for it. Text messages between the Rincons and Mr. Hicks on June 1, 2022, show that Mr. Hicks acknowledged that the "fan was in the original price," but he told them to "[j]ust order the fan that [they] want and we would deduct it out of the money at the end." Rincon Exh. 7, p. 000289. Because the Original Contract is not valid, the Rincons are only owed the price of the fan if they paid Mr. Hicks for it, but he did not deliver it. No such allegation was made or established.

[28] The Original Contract provides for the installation of two track lights, and Mr. Hicks testified that he was paid for that work. The Rincons decided they wanted recessed lighting installed instead of track lights. The parties agree that Mr. Hicks installed recessed lights as requested. The Rincons seek repayment for the track lights without reimbursing Mr. Hicks for the recessed lights. Mr. Hicks testified that the cost of the recessed lighting was slightly more than the track lights. The court finds that although the Rincons did not receive the track lights, they received the lights that they ultimately wanted.

[29] The Rincons decided not to use turf. The Rincons have no documentation that they paid for this. However, they maintain that it was part of the original scope of work in the Original Contract. Mr. Hicks testified that he did not install this and was not paid for it.

[30] The Rincons have no documentation that they paid for this. Mr. Hicks testified that he did not install this and was not paid for it. The Rincons maintain that the landscape lighting was part of the original scope of work in the Original Contract. However, the Original Contract specifically provides that the landscape lighting is "not included" and gives a "[r]ough estimate" of $1,500. Rincon Exh. 1.

[31] Mr. Hicks testified that he was not sure what the Rincons were asking for in this line item. Mr. Rincon testified that this is the estimated cost for two doors for the screened porch, but he did not support the cost with evidence. The Original Contract provides for two screen doors, but the Rincons have neither alleged nor established that they paid Mr. Hicks for the doors.

9.8      Roof repair - $3,580.

## C.  Restoration of the Rincons to the Situation that Existed before the Contract

Although damages for breach of contract are not available, Louisiana law on null contracts nevertheless requires courts to restore the parties to the situation that existed before the contract was entered. Determining the amount of their claim for damages requires tough calls with contradictory testimony.  Ultimately, the decision rests on whether the Rincons met their burden of proof on each line item in the Affidavit.  Each portion of their claim is addressed below:

### 1. Amounts Paid for which the Rincons Did Not Receive Services or Goods

In this case, the Rincons are clearly entitled to monetary damages for any amounts that they paid Mr. Hicks but for which they did not receive the contemplated materials or services.

5.1      **EZ Screen System** – The parties agreed that Mr. Hicks was paid $2,890 to put in an EZ Screen System on the back porch.  At trial, Mr. Hicks proved that he installed the framework of the system, but he did not install the screens.[32]  He acknowledged that he believed he was already paid for the screen, even though it had not yet been installed when he was terminated.  Mr. Hicks testified that the screen is one of the final things installed on a construction job so that it does not get ripped. Mr. Hicks also testified that the screen to finish the job cost about $150.  The Rincons did not dispute the amount the screen would cost and failed to establish the cost of installation of the screen.  Based on the testimony and considering that the

---

[32] Mr. Rincon acknowledged on cross examination that the only thing left was to put on the actual screen. Photographs introduced into evidence corroborate this.  Rincon Exh. 7, p. 00028485; Hicks Exh., pp. 29-30.  Mr. Hicks admitted that he removed a roll of screen from the Rincons property at 4:30 one morning.  He testified that he did not intend to steal screen from the Rincons but that the screen at the Rincons was meant for another job and that the roll of screen would have been enough for four jobs.  The Rincons filed a police report, and Mr. Hicks plead guilty to theft of over $25,000 as part of a plea deal in an attempt to retain the contractor's license he acquired after he stopped working for the Rincons.

Rincons bear the burden of proof, the court finds that they are only owed $150 of the $2,890 requested.

5.2      **Material for concrete wood grid** – The Rincons seek $2,800.  The Original Contract shows that Mr. Hicks would "form and pour 3 x 5' concrete pavers with 4 inch spacing for grass."[33] The Rincons wanted to use turf between the pavers.  To accommodate the turf, the spacing was increased to 6.5 inches. After the concrete was poured, the Rincons decided they wanted a wood grid installed between the pavers instead. The Rincons changed their minds and decided to have a layer of limestone gravel put between the pavers and then a layer of limestone rock on top of it.[34] Testimony of Mr. Hicks and Mr. Rincon established that Mr. Hicks installed the gravel, but he did not install the top layer of rock.  The only part that Mr. Hicks did not complete is the top layer, so he is only responsible for that portion.  The Rincons did not introduce evidence of the cost of the top layer of the rock. Because they bear the burden of proof, they did not prove this portion of their claim.

5.3      **Moveable island** – The Rincons seek $2,978.  Mr. Rincon testified that he paid Mr. Hicks for this work.  Mr. Hicks testified that he did not do this work because he was terminated.  Mr. Hicks did not dispute that he received payment.  The court finds that the Rincons met their burden of proving their claim for $2,978.

5.4      **Windows** - The Rincons seek $6,397.28. Mr. Hicks admitted that he was paid for this, but he did not complete it.  The court finds that the Rincons met their burden of proving their claim for $6,397.28.

---

[33] Rincon Exh. 1.

[34] The Rincons ultimately changed their minds again, which is discussed in paragraph 10.3.

5.5     **Concrete countertop material** - The Rincons seek $1,650. Mr. Hicks admitted that he was paid for this, but he did not complete it. The court finds that the Rincons met their burden of proving their claim for $1,650.

5.6     **Outdoor kitchen appliances** - The Rincons seek $4,750. Mr. Rincon testified that he paid Mr. Hicks for this. Mr. Hicks testified that he intended to install them last, so they would not be damaged.  Mr. Hicks did not dispute that he received payment, and therefore, the court finds that the Rincons met their burden of proving their claim for $4,750.

5.15    **Lighting (two motion and two track)** - The Rincons seek $250. Mr. Rincon testified that this portion of the claim is only for the two motion lights.  He maintained that he paid for them, but they were not provided or installed.  Mr. Hicks testified that he was 99% sure he installed them.  Mr. Hicks' uncertainty was not sufficient to rebut Mr. Rincon's testimony.  The court finds that the Rincons have met their burden of proving this $250 portion of their claim.

5.17    **Final screen room exterior siding and trim** - The Rincons seek $1,475. Mr. Rincon testified that this is for the trim that connects the screen to the frame.  Mr. Hicks testified that the exterior siding and trim were finished. As discussed in paragraph 5.1, Mr. Hicks testified that only the screen was missing from the back porch.  He introduced photographs into evidence that show the completed screen frame and the exterior siding.[35] A photograph introduced by the Rincons showed that the trim that was meant to connect the screen to the siding was present and was crooked.[36]  Mr. Hicks' explanation was that the trim was not meant to be secured until the screen was put in place.  The court finds this testimony

---

[35] Hicks Exh., pp. 29-30.

[36] Rincon Exh. 7, p. 00028485.

by Mr. Hicks credible and reasonable.   The Rincons have not met their burden of proving

this portion of their claim.

The total claim allowed for amounts the Rincons' paid without receiving goods or services is

$16,175.28.

### 2. Hiring Additional Contractors Due to Mr. Hicks' Actions or Inactions

The Rincons' claim also includes "actions and/or inactions" by Mr. Hicks related to his

work or scope of work that they "were forced to hire additional contractors to … complete" due

to faulty workmanship or materials.  La. C.C. art. 2762 provides in pertinent part:

> If a building, which an architect or other workman has undertaken to make by the
> job, should fall to ruin either in whole or in part, on account of the badness of the
> workmanship, the architect or undertaker shall bear the loss if the building falls to
> ruin in the course of ten years, if it be a stone or brick building, and of five years
> if it be built in wood or with frames filled with bricks.

The court in *Quaternary Res. Investigations, LLC v. Phillips*[37] interpreted La. C.C. art. 2762

to "impose[ ] a duty upon contractors to construct a work that is suited for its intended purpose

and to perform their work in a good and workmanlike manner free from defects in materials and

workmanship."[38]   Each paragraph of the Affidavit that dealt with alleged "actions and/or

inactions" of Mr. Hicks requiring another contractor to complete the work is addressed below.

9. 1    **Electrical work**

a.   The Rincons' claim includes $1,600 they paid to Electric Padilla, LLC ("Padilla").

Mr. Rincon testified that Padilla did the initial electrical work under Mr. Hicks'

supervision.  Padilla's representative later went to the Rincons' house and told

---

[37] *Quaternary Res. Investigations, LLC v. Phillips*, 2018-1543 (La. App. 1 Cir. 11/19/20), 316 So. 3d 448, *writ denied,* 2020-01450 (La. 3/2/21), 311 So. 3d 1059.

[38] *Id*. at 470 (citing *Hallar Enterprises, Inc. v. Hartman,* 583 So. 2d 883, 890 (La. App. 1st Cir. 1991)).

them Padilla had not been paid by Mr. Hicks and planned to put a lien on their home if they did not pay it.  The Rincons worked out an agreement with Padilla that they would pay it directly if Padilla would complete its work.  The Rincons paid Padilla to change the height of outdoor sconces and balance the fan that Mr. Hicks, or his crew, installed.  Mr. Hicks testified that Mrs. Rincon asked him to move the sconces higher to accommodate the new lights she chose.  When the siding was removed to move the sconces, the electrician told Mr. Hicks that to move the sconces higher, "code" required the addition of a junction box in the wall with an access point from inside the house. Therefore, it was determined that the sconces could not be moved.  Mr. Rincon later testified that the sconce placement was changed by Padilla by adding the junction box and covering it up. The Rincons did not prove that they paid Mr. Hicks to do this work.  Therefore, Mr. Hicks is not responsible for their payment to have it done later.  The court finds that the Rincons have not met their burden of proving this part of their claim.

b.  The Rincons' claim includes $3,000 they paid to Baton Rouge Restoration and Remediation ("BR R&R").  Mr. Rincon testified that he and his wife paid to connect and repair the water line from the house to the outdoor sink and ice maker and to run the gas line to the fireplace, outdoor kitchen, and grill area.[39]   The Rincons did not prove that they paid Mr. Hicks to do this work.  Therefore, Mr. Hicks is not responsible for their payment to have it done later.  The court finds that the Rincons have not met their burden of proving this part of their claim.

---

[39] Rincon Exh. 6-F.

9. 2     **Hardie-board siding** - The Rincons' claim includes $4,500 they paid to BR R&R. The Affidavit asserts this was to fix improperly installed materials.  Mr. Hicks testified that all siding was completed and painted except base trim on the columns and the siding that had been removed to see if the sconces could be moved.  Mr. Hicks testified that he had not replaced that siding before he was terminated by the Rincons. The court finds that the Rincons have met their burden of proving this $4,500 portion of their claim.

9. 3     **Outdoor kitchen cabinets** - The Rincons' claim includes $3,200 they paid to BR R&R. The Rincons contend that the outdoor kitchen cabinets that Mr. Hicks installed had to be replaced due to mold and that the shelving had not been installed. Pictures introduced into evidence at trial[40] showed the mold. The estimate, signed by the Rincons, showed that BR R&R rebuilt the cabinets with treated wood and Spanish cedar doors and drawers.  Mr. Hicks testified that he used marine grade plywood that was outdoor rated for the cabinet boxes.  However, the pictures support the Rincons' claim.  The court finds that the Rincons have met their burden of proving this $3,200 portion of their claim.

9. 4     **Outdoor brick kitchen** - The Rincons' claim includes $600 they paid to BR R&R.  The Rincons contend that Mr. Hicks built the outdoor brick kitchen but that it had to be adjusted because Mr. Hicks did not leave adequate space for the stovetop they specified.  Mr. Hicks contends that the outdoor kitchen was built to the specifications they provided him. The court finds credible Mr. Rincon's testimony

---

[40] Rincon Exh. 4, pp. 10-15.

that the bricks had to be adjusted to fit the appliances.  The court finds that the Rincons have met their burden of proving this $600 portion of their claim.

9. 5  **Awning** - The Rincons' claim includes $9,600 they paid to BR R&R.  The Rincons contend that the awning installed by Mr. Hicks over their grilling area had to be removed and rebuilt because it was cracking the bricks on the exterior of their house.   They introduced pictures into evidence showing both the cracks in the bricks and the holes revealed when the original awning was removed.[41]  Mr. Hicks testified that to prevent putting pressure on the bricks, he went through the wall in the shed behind the bricks and installed plates so he could run bolts through the brick to the wall structure. Mr. Hicks testified that the only remaining item to complete the awning was the metal roof.  Mr. Rincon testified that BR R&R installed a replacement awning on top of the roof so that it would not put pressure on the bricks. Mr. Rincon conceded that the replacement awning was larger than the one he had Mr. Hicks install.  While the Rincons did prove the original awning installed by Mr. Hicks cracked the bricks and that he did not patch the holes he made to bolt it to the wall structure, the Rincons did not prove what it would have cost to replace the same size awning. However, text messages between Mr. Hicks and the Rincons admitted into evidence reveal that he had asked them for a draw for $1,678.[42] The Rincons have met their burden of proof with respect to $1,678 of this claim but have fallen short with the remainder of this portion of their claim.

---

[41] Rincon Exh. 4, pp. 27-32, 54.

[42] Rincon Exh. 7, p. 000222.

9. 6   **Exterior porch ceiling and panel wall** - The Rincons' claim includes $3,500 paid to BR R&R. The Rincons contend the wood Mr. Hicks used on the back wall of the screened porch had to be replaced with treated lumber because it was expanding. They introduced no evidence in support.   Mr. Hicks testified that treated lumber was not needed and that what he installed had been stained and sealed.  Mr. Hicks introduced pictures that supported his testimony.[43] The court finds that the Rincons have not met their burden of proving this portion of their claim.

9. 7   **Drainage system by grill area** - The Rincons' claim includes $11,000 paid to BR R&R. The Rincons contend that the "[d]rainage system had to be redone by the grill area to install a catch basin with a submersible pump. Rocks in front of the grill and bar area had to be removed behind backyard fence.  Existing concrete had to be removed and reformed on front patio."  Mr. Rincon testified that the $11,000 they are claiming consists of two parts:  $5,200 for concrete work and $5,800 for drainage.[44] As for the concrete cost, Mr. Rincon testified that he had BR R&R expand the concrete pad that Mr. Hicks had poured since they had increased the awning size. Testimony shows that the Rincons wanted a larger grilling area, but they have not established why Mr. Hicks should be responsible for that $5,200 cost.   As for the $5,800 drainage, Mr. Rincon testified that when it rained, the drainage installed by Mr. Hicks backed up.  However, the Rincons did not establish that they paid Mr. Hicks to do this work.    The court finds that the Rincons have not met their burden of proving this portion of their claim.

---

[43] Hicks Exh. p. 27.

[44] Rincon, Exh. 6-A.

9. 9        **Vegetable garden walkway** - The Rincons seek $885.82. Mr. Rincon testified

that he and his wife allowed Mr. Hicks to use pavers that were in their yard as filler for

holes he made when running drainage and that Mr. Hicks had agreed to replace the

pavers.  Mr. Hicks did not refute this testimony.  The court finds that the Rincons have

met their burden of proving this $885.82 portion of their claim.

9. 10        **Speaker wires** - The Rincons seek $150 to repair speaker wires. Mr. Rincon

testified that after Mr. Hicks installed interior trim, a speaker was not working.  He paid

to have it repaired.  Mr. Hicks testified that he recalls Mr. Rincon mentioning that the

speaker was not working and said it is possible that he hit a wire with a nail while he was

installing the trim.  The court finds that the Rincons met their burden of proving this $150

portion of their claim.

9. 11        **Two fig trees** – The Rincons seek $100 to replace two fig trees. Mr. Hicks

admitted to damaging at least one fig tree.  The court finds Mr. Rincon's testimony

credible that Mr. Hicks or his crew damaged two fig trees.  The court finds that the

Rincons met their burden of proving this $100 portion of their claim.

10. 1        **Drainage** - The Affidavit includes a $26,400 estimate for drainage work by

Riveria Landscape.[45] The parties did not dispute that the Rincons paid Mr. Hicks to

address drainage or that he did work on their drainage.  The Rincons contend, however,

that despite paying Mr. Hicks, they still had extensive drainage issues requiring another

contractor to step in and fix it. Rincon Exhibit 2, admitted into evidence without

objection, provides a summary breakdown of items, the price charged, any credits

afforded, and draws received by Mr. Hicks.  This summary reflects that the Rincons

---

[45] Rincon Exh. 6-H.

were charged $16,950 by Mr. Hicks for drainage.  Text messages between the Rincons and Mr. Hicks showed that they advised him of the ongoing drainage issues after his efforts.[46]  The Rincons also introduced pictures and videos of standing water in the yard.[47]  Despite receiving an estimate by Riveria Landscape to rectify Mr. Hicks' work, the Rincons instead paid BR R&R $16,870[48] for drainage work on the left side of the house only.  Undisputed testimony also established that they have not had additional drainage work done on the right side of the house because they could not afford it.  The Rincons established that the work done by Mr. Hicks failed to adequately address drainage issues.  The court finds that the Rincons have therefore met their burden of proving damages of $16,950, or the amount they paid Mr. Hicks.

10. 3    **Reform concrete walkway** - The Rincons' claim includes a $3,183.45 estimate from Cocreham Brick & Stone Corp.[49]  The Rincons decided they wanted brick pavers between the concrete on their walkway rather than limestone. The courts sees no justification for requiring Mr. Hicks to pay for this change.  Accordingly, the court finds that the Rincons have not met their burden of proving this portion of their claim.

10. 4    **Broken window and glass in sliding door** - The Rincons' claim includes a $1,217.41 estimate from RDV Glass, LLC.[50]  Mr. Hicks admitted at trial that he broke the window, but he was not sure about the sliding glass door.  The court finds credible

---

[46] Rincon Exh. 4, pp. 131-32, 134, 266-68, 278-80, 308-09.

[47] Rincon Exh. 4, pp. 21-23, 26. Rincon Exh. 5.

[48] Rincon Exh. 6-A.

[49] Rincon Exh. 6-G.

[50] Rincon Exh. 6-C.

Mr. Rincon's testimony that both were broken by Mr. Hicks or his crew, and therefore, the Rincons have met their burden of proving this $1,217.41 portion of their claim.

10. 5    **Storage room walls** - The Rincons' claim includes $1,142 paid to Handyman Connection.[51]  Mr. Hicks acknowledged at trial that his electrical contractor put holes in the walls to install electrical wires and that the holes were not patched before he had been terminated.  The court finds that the Rincons have met their burden of proving this $1,142 portion of their claim.

10. 6    **Storage room cabinet** - The Rincons' claim includes $70 paid to Handyman Connection.[52] Mr. Hicks acknowledged that his crew took down the storage room cabinet to bolt the awning in place and that the cabinet had not been re-hung before he was terminated.   The Rincons have met their burden of proving this $70 portion of their claim.

10. 7    **Gate hinges** - The Rincons' claim includes $459 paid to Handyman Connection. [53] The Rincons contend that Mr. Hicks and his crew bent the hinges on the yard gates. Mr. Hicks testified that the gate did not work properly when he began the job and denied damaging the gate.  Mr. Rincon acknowledged that the latch on the gate was not working properly when Mr. Hicks began work, but Mr. Rincon contends that the hinges, not the latch, are what Mr. Hicks and his crew damaged.  The Rincons introduced pictures of the bent hinges.[54]  The court finds that the Rincons have met their burden of proving this $459 portion of their claim.

---

[51] Rincon Exh. 6-B.

[52] Rincon Exh. 6-B.

[53] Rincon Exh. 6-B.

[54] Rincon Exh. 4, pp. 18-20.

10. 8    **Driveway cleanup** - The Rincons' claim includes $1,077 paid to Handyman

Connection .[55] The Rincons contend construction debris was left on their driveway by

Mr. Hicks, and they had it pressure washed.  Mr. Hicks testified that had he not been

terminated he would have cleaned up the debris and not charged the Rincons for it.

Accordingly, the court finds that the Rincons have met their burden of proving this

$1,077 portion of their claim.

10. 9    **Clean up limestone** - The Rincons seek $180. The Rincons contend that Mr.

Hicks left a pile of limestone on their driveway, and they had to pay to have it cleared.

Mr. Hicks contended that had he not been terminated, he would have cleaned it up.  The

court finds that the Rincons have met their burden of proving this $180 portion of their

claim.

10. 10    **Cement for backyard fence posts** - The Rincons seek $370. The Rincons

contend that Mr. Hicks did not cement their fence posts in place.  As of the date of the

hearing, however, they had not paid another contractor.   Mr. Hicks testified that he

cemented the fence posts in place below the surface, so the cement would not be visible.

The court finds Mr. Hicks' testimony on this issue credible.  Therefore, the court finds

that the Rincons have not met their burden of proving this portion of their claim.

10. 11    **Water damage on master bedroom floor** - The Rincons' claim includes $2,500

estimated to repair the floor. The Rincons contend that after Mr. Hicks poured a concrete

slab for them outside of their master bedroom, water started coming in under their

sliding door, causing their floors to buckle. Mr. Hicks testified that he has no knowledge

---

[55] Rincon Exh. 6-B.

of this.  The court finds Mr. Rincon's testimony on this issue credible.  Therefore, the court finds that the Rincons have met their burden of proving this $2,500 portion of their claim.

10. 12    **Iron chair** - The Rincons' claim includes $500 estimated to replace a chair. The Rincons contend that Mr. Hicks bent an iron chair that was in their backyard.  The Rincons did not introduce any support for the estimated cost.  Mr. Hicks testified he did not bend the chair and has no knowledge of this. The court finds Mr. Hicks' testimony on this issue credible, and the Rincons introduced no evidence to support this portion of their claim. Therefore, the court finds that the Rincons have not met their burden of proof on this portion of their claim.

10. 13    **Sod** - The Rincons' claim includes $5,400 estimated by Overgrown LLC[56] to replace sod. The Rincons contend that Mr. Hicks killed sod by driving a tractor over it and did not replace it.  Mr. Hicks vehemently denied it.  The court finds Mr. Hicks' testimony on this issue credible, and the Rincons introduced no evidence to support this portion of their claim. Therefore, the court finds that the Rincons have not met their burden of proof on this portion of their claim.

The court finds that the Rincons have an allowed claim for $34,709.23 based on actions or inactions of Mr. Hicks for which they did hire or will have to hire other contractors.

**3.  Items the Rincons Claim that Mr. Hicks Stole**

In paragraph 8 of the Affidavit, the Rincons contend that Mr. Hicks stole the following items totaling $435: D-handle shovel, wooden handle forged steel spade, D-handle garden spade, pick mattock, steel garden rake, five portable gas tanks, and a measuring wheel.  Mr. Hicks testified

---

[56] Rincon Exh. 6-I.

that to his knowledge, he did not take these items.  He testified that he believes the items may have been stolen by someone else, as Mrs. Rincon had listed the Rincons' storage shed for sale on Craigslist and left the items that had been inside it in the yard.  The court finds that the Rincons have not met their burden of proving this portion of their claim.

### D.  Allowed Amount of the Claim/Money Damages

As summarized above, the Rincons met their burden of proof as to $50,884.51 of their claim, not including attorneys' fees.  Therefore, Mr. Hicks' objection to their claim will be sustained in the amount of $74,065.45.  The court must now decide whether this liquidated debt was incurred by fraud pursuant to Louisiana law and, if so, to what extent the Rincons are entitled to attorneys' fees.

### E.  Fraud under Louisiana Law

La. C.C. art. 1953 defines fraud under Louisiana law as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."  The court in *Robinson v. Papania*[57] set out the following three elements of fraud under Louisiana law:

> (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract.

Pursuant to La. C.C. art. 1957 those elements must be proven "by a preponderance of evidence and may be established by circumstantial evidence."

---

[57] *Robinson v. Papania*, 2022-1010 (La. App. 1 Cir. 3/6/23), 368 So. 3d 74, 80, *writ denied,* 2023-00488 (La. 5/23/23), 360 So. 3d 1262.

Both Mr. and Mrs. Rincon testified that they asked Mr. Hicks whether he was a licensed contractor and that he responded affirmatively.  Mrs. Rincon testified that she asked Mr. Hicks several times for his license number, but he continuously made excuses for not providing it to her.  Mrs. Rincon's contemporaneously made notes corroborate her testimony.[58]

At trial, Mr. Hicks admitted that he was unlicensed, but denied telling the Rincons that he was licensed.  He testified that the Rincons never asked if he was licensed.  Mr. Hicks' testimony is at odds with the affidavit he submitted in connection with his response to a Motion for Summary Judgment filed earlier in this proceeding.  In the affidavit, Mr. Hicks attested, "Gabriel Rincon asked if I held a Residential Contractor's License and I informed him that I did not."[59] Weighing the evidence presented and the credibility of witnesses, the court finds that the Rincons have proven by a preponderance of evidence that Mr. Hicks falsely represented to them that he was a licensed contractor in Louisiana.  Thus, they have proven the first element of fraud under Louisiana law.

The second element is whether Mr. Hicks had "the intent to obtain an unjust advantage or to cause damage or inconvenience to another."  As La. C.C. art. 1957 provides, this "may be established by circumstantial evidence."  The Rincons testified that they would not have hired Mr. Hicks had they known he was not licensed.   Mr. Hicks must have known by the Rincons repeatedly asking to see his license that it was important to their decision to hire him.  Therefore, the court finds that the Rincons have proven by a preponderance of evidence that Mr. Hicks had

---

[58] Rincon Exh. 8, pp. 370, 374.  In Mr. Hicks' post-trial brief, he complained that he did not receive the notebook pages until "six days before the trial, buried in 579 pages of documents."  However, Mr. Hicks did not object to the introduction of the notebook pages into evidence, but instead he stipulated to their admissibility.

[59] Adv. no. 23-1014, P-26-3.

the intent to gain an unjust advantage over the Rincons by misrepresenting that he was a licensed contractor.

The third element of fraud under Louisiana law is that "the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract." As previously held, the Rincons testified credibly that they would not have hired Mr. Hicks had they known he was not licensed. The court finds that the Rincons have proven by a preponderance of evidence that the Rincons' consent to hire Mr. Hicks was substantially influenced by Mr. Hicks' misrepresentation.

The Rincons have proven all elements necessary to show Mr. Hicks committed fraud under Louisiana law. The court will now address their claim for attorneys' fees.

### F. Attorneys' Fees

The Rincons seek attorneys' fees of $52,758.84. In *LaRocca v. Louisiana Motor Vehicle Commission,*[60] the court held that "[u]nder Louisiana law, attorney's fees are recoverable only where specifically authorized by statute or contract."[61] The Rincons contend they are entitled to attorneys' fees based on La. C.C. art. 1958, which provides that "[t]he party against whom recission is granted because of fraud is liable for damages and attorney fees."

At first blush, one might conclude that attorneys' fees are only available in a fraud case if the party successfully rescinds the contract. However, under Louisiana law, Mr. Hicks was required to hold a license under La. R.S. § 37:2150, *et seq*. That statute is a textbook example of a rule of public order. La. C.C. art. 2030 and the litany of case law on the subject leave no doubt

---

[60] *LaRocca v. Louisiana Motor Vehicle Comm'n,* 22-197 (La. App. 5 Cir. 5/10/23), 364 So. 3d 1246.

[61] *Id*. at 1269 (citing *Hoffman v. 21st Century North America Ins. Co*., 14-2279 (La. 10/2/15), 209 So. 3d 702, 707; *Garden Lakes Condominium Homeowners Ass'n, Inc. v. Perrier*, 10-1016 (La. App. 5 Cir. 5/24/11), 66 So. 3d 1147, 1148).

that the lack of a license renders a residential building contract an absolute nullity. Understandably, the Rincons have not sought rescission because the contract between the Rincons and Mr. Hicks is absolutely null, making its rescission as a relative nullity both unnecessary and duplicative.

The Louisiana Supreme Court's ruling in *Stutts v. Melton*,[62] though not directly on point, is instructive. In that case, the sellers sold their house to the buyers. In conjunction with the sale, the sellers falsely indicated to the buyers on a Residential Property Disclosure Form that there were no known roof defects. The buyers filed suit against the sellers for the cost of replacing or repairing the roof plus legal interest and attorneys' fees. The state district court found the buyers guilty of fraud and awarded damages and attorneys' fees. On appeal, the appellate court reversed. The buyers sought writs, which were granted by the Louisiana Supreme Court. The Louisiana Supreme Court held, in pertinent part, that even though the buyers had not sought rescission of the sale, they were entitled to attorneys' fees pursuant to La. C.C. art. 1958; it reasoned "[s]urely, the legislature did not intend the victim of fraud to go uncompensated for attorney fees, or for that matter, any damages at all, unless he seeks rescission of the entire contract."[63]

Applying that rationale here, the Rincons are entitled to attorneys' fees for their successful prosecution of a fraud damage claim of $50,884.51. In *Taviani v. Akrom, Inc.*,[64] the court held that attorneys' fees awarded pursuant to La. C.C. art. 1958 must be reasonable.[65]

---

[62] *Stutts v. Melton,* 2013-0557 (La. 10/15/13), 130 So. 3d 808.

[63] *Id*. at 814.

[64] *Taviani v. Akrom, Inc*., 22-475 (La. App. 5 Cir. 4/26/23), 363 So. 3d 1284, *reh'g denied* (May 22, 2023), *writ denied*, 2023-00863 (La. 10/10/23), 371 So. 3d 456.

[65] *Id*. at 1290. *See also Organ v. Covington Heating & Air Conditioning*, 552 So. 2d 759, 761 (La. Ct. App. 1989).

In *Spurgeon v. Leleux*,[66] the court enumerated factors that the court should take into consideration when determining the reasonableness of attorneys' fees:

> Factors to be taken into consideration in determining the reasonableness of attorney's fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorney; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.[67]

In this case, the parties agreed to a post-trial opportunity to supplement the record with an itemized request for fees and additional time for briefing. The Rincons filed a motion in the adversary proceeding to set attorneys' fees,[68] which included the affidavit of Jacob Chapman and attached all pertinent invoices billed to the Rincons. The Rincons also filed an accompanying memorandum in support.[69] Mr. Hicks filed a memorandum in opposition.[70] Although the motion probably should have been filed in the main case as well as the adversary proceeding, the court will treat the filing as if it had been filed in both.

The Rincons seek $52,758.84 in fees, a number supported by contemporaneous time entries. However, the court cannot ignore the ultimate claim awarded in this case, which lands slightly below the fee request amount. Perhaps more to the point, a significant portion of the fee request relates to the prosecution of the declaratory action under section 523 of the Bankruptcy

---

[66] *Spurgeon v. Leleux*, No. 6:11-CV-01807, 2019 WL 138388 (W.D. La. Jan. 8, 2019). *See also Taviani*, 363 So. 3d at 1290.

[67] *Spurgeon*, 2019 WL 138388, at *12 (citing *State Dep't. of Trans. & Develop. v. Williamson*, 597 So.2d 439, 442 (La. 1992)).

[68] Adv. no. 23-1014, P-51.

[69] Adv. no. 23-1014, P-53.

[70] Adv. no. 23-1014, P-55.

Code. It is well settled that a creditor is not entitled to reimbursement for attorneys' fees expended successfully prosecuting a section 523 action. In *In re Castandea*,[71] the court held:

> Under the American Rule, each party pays its own attorney's fees arising out of litigation. An exception exists when specific authority is granted by statute or contract states otherwise. Since the Bankruptcy Code does not independently provide attorney's fees to a party seeking an exception to discharge, there must exist a basis for an award of attorneys' fees.[72]

The Rincons have not pointed to any statutory or contractual basis that would allow them attorneys' fees for prosecuting the section 523 action. As the court noted in *In re Carter*,[73] "11 U.S.C. § 523 does not provide attorney's fees as relief to the prevailing party."[74]

Accordingly, the court necessarily rejects an award amounting to over 100% of the claim ultimately realized. As reflected by the invoices, the Rincons became indebted to counsel for the efforts to obtain a judgment in state court in the aggregate amount of $12,787.50 through January of 2023. Those charges were at a reasonable rate of $250 per hour. From the supporting affidavit,[75] no legal fees are being sought from the end of January 2023 until the bankruptcy filing in May of 2023. The court finds these fees reasonable and that they should be part of the allowed claim.

Once the bankruptcy was filed, the Rincons are only entitled to the portion of post-petition fees that were incurred in furtherance of allowance of their damage claim. Those time

---

[71] *In re Castandea*, 638 B.R. 737 (Bankr. S.D. Tex. 2022).

[72] *Id*. at 748 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *In re Koukhtiev*, 576 B.R. 107, 135 (Bankr. S.D. Tex. 2017)).

[73] *In re Carter*, No. 17-35082, 2018 WL 6060391 (Bankr. S.D. Tex. Nov. 19, 2018).

[74] *Id*. at *40.

[75] Adv. no. 23-1014, P-51-1.

entries were all billed at $250 per hour,[76] for time spent through the day before trial.  The court

notes that many of the time entries submitted could arguably be attributable to both the damage

claim and the section 523 action.  In those instances, the court limits the amount to half and

places an asterisk by the entry.  Therefore, the total fees requested related only to the fraud

damage claim, accounting for several half time amounts, total $5,387.50, itemized as follows:

| Date | Atty | Description | Quantity | Rate | Total |
|------|------|-------------|----------|------|-------|
| (a) 12-1-23 | JC | Filing proof of claim | 0.3 | $250.00 | $75.00 |
| (b) 12-1-23 | AC | Communication with J. Chapman regarding Proof of Claim issues … | 0.2 | $250.00 | $50.00 |
| (c) 4-2-24 | JC | Receipt and review of licensure information from Louisiana Board of Contractors; exchange of emails with Todd at Board of Contractors … | 0.4 | $250.00 | $100.00 |
| (d) 5-13-24 | AC | Communication with D. Mooney regarding exchange of exhibits, potential stipulations, & request for conference for pretrial order | 0.2 | $250.00 | $25.00* |
| (e) 5-21-24 | AC | Draft amended proof of claim per court order | 0.2 | $250.00 | $50.00 |
| (f) 5-21-24 | AC | Draft proposed stipulations regarding consent for Judge Crawford to hear monetary damages | 0.3 | $250.00 | $75.00 |
| (g) 5-21-24 | JC | Phone call with Gabe regarding update of status of case; regarding stipulation to allow Judge Crawford to hear case on amount of damages … | 0.3 | $250.00 | $75.00 |

---

[76] JC is Jacob Chapman and AC is Ashley Caruso, a former attorney practicing at the Sternberg firm.

| | | | | | | |
|---|---|---|---|---|---|---|
| (h) 5-22-24 | JC | Phone call with David Mooney regarding stipulation … | 0.4 | $250.00 | $100.00 |
| (i) 5-22-24 | JC | Finalized and filed Amended Proof of Claim; phone call with Gabe, … | 0.7 | $250.00 | $175.00 |
| (j) 5-22-24 | AC | Communication with D. Mooney for joint stipulations, approval … | 0.2 | $250.00 | $50.00 |
| (k) 6-25-24 | JC | Phone call with Gabe regarding deposition of Kasey Hicks … | 0.7 | $250.00 | $87.50* |
| (l) 6-25-24 | JC | Telephone conference with client and began preparing for deposition of Kasey Hicks | 0.9 | $250.00 | $112.50* |
| (m) 6-26-24 | JC | Review and marking of extensive text messages for use in deposition … | 2.8 | $250.00 | $350.00* |
| (n) 6-27-24 | JC | Continued preparation for deposition of Kasey Hicks. | 0.7 | $250.00 | $87.50* |
| (o) 6-28-24 | JC | Final preparation for and attendance at deposition with Kasey Hicks. | 3.2 | $250.00 | $400.00* |
| (p) 7-22-24 | JC | Preparation for and attendance at final pretrial conference. | 1.7 | $250.00 | $212.50* |
| (q) 7-23-24 | JC | Began drafting pretrial order per instructions from Court. | 3.5 | $250.00 | $437.50* |
| (r) 7-23-24 | JC | Completed initial draft of pre-trial Inserts to be circulated to opposing counsel. | 2.1 | $250.00 | $262.50* |
| (s) 7-24-24 | JC | Finalized draft of pretrial order and exchange of emails with opposing counsel attaching same and requesting his inserts. | 2.4 | $250.00 | $300.00* |
| (t) 7-24-24 | JC | Receipt and review of deposition transcript of Kasey Hicks and marking for use as potential impeachment … | 1.0 | $250.00 | $125.00* |
| (u) 7-25-24 | JC | Receipt of pretrial inserts from | 0.3 | $250.00 | $37.50* |

|  |  |  | opposing counsel; review of same and incorporation into final pretrial documents. |  |  |  |
|---|---|---|---|---|---|---|
| (v) | 7-25-24 | JC | Exchange of emails with Court regarding filing and uploading of all exhibits and pretrial documents. | 0.1 | $250.00 | $12.50* |
| (w) | 7-26-24 | JC | Extensive review of amounts allegedly due according to Affidavit of Correctness, … | 2.8 | $250.00 | $700.00 |
| (x) | 7-29-24 | JC | Drafting trial outlines. | 2.7 | $250.00 | $337.50* |
| (y) | 7-29-24 | JC | Review of deposition transcript and … and marking for use in anticipation of impeachment of Kasey Hicks. | 1.8 | $250.00 | $225.00* |
| (z) | 7-30-24 | JC | Trial outlines (2 separate entries) | 3.4 | $250.00 | $425.00* |
| (aa) | 7-31-24 | JC | Trial prep | 4.0 | $250.00 | $500.00* |
|  |  |  | Subtotal for post-petition time before trial - |  |  | $5,387.50 |

Finally, the court acknowledges that the Rincons are entitled to fees for counsel time spent on the day of trial. Although no time sheet for the trial date is reflected in the affidavit, the effort was certainly no less than nine hours total. Applying half of the time charged to the claim amount renders an additional fee awarded of $1,125, for a total award of $19,300. That amount, or less than the 40% of the underlying allowed claim, is certainly within a reasonable range for this recovery. This court further recognizes the complexity of the case as supporting an award of fees of $19,300, not to mention the undeniable fact that a trial for a relatively small sum still requires a certain level of attention in keeping with this award. In summary, the Rincons have proved a damage claim for $50,884.51 plus attorneys' fees of $19,300 for a total claim of $70,184.51. Next, the court must decide whether that claim should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

## IV. Section 523(a)(2)(A)

The Rincons contend that Mr. Hicks committed fraud when misrepresenting his status as a licensed contractor. Therefore, they allege the debt is nondischargeable under section 523(a)(2)(A), which provides:

> (a) A discharge under section 727, 1141, 1192[1] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- …
>
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>>
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; …

In *Matter of Lawrence*,[77] the Fifth Circuit held:

> Nondischargeability is a matter of federal law and "must be established by a preponderance of the evidence." A basic principle of bankruptcy is that "exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor[.]" However, "a debtor has no constitutional or fundamental right to a discharge," and the "[Code] limits the opportunity for a completely unencumbered new beginning to the honest but unfortunate debtor."[78]

In *Matter of Selenberg*,[79] the Fifth Circuit held that the elements of "actual fraud" include:

> (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations.[80]

---

[77] *Matter of Lawrence*, No. 21-10103, 2022 WL 118966 (5th Cir. Jan. 12, 2022).

[78] *Lawrence*, 2022 WL 118966, at *1 (citing *Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*, 864 F.3d 344, 349 (5th Cir. 2017); *Grogan v. Garner*, 498 U.S. 279, 284-87 (1991)).

[79] *Matter of Selenberg*, 856 F.3d 393 (5th Cir. 2017).

[80] *Selenberg*, 856 F.3d at 398.

### A. Knowingly False Representations

The Rincons contend that Mr. Hicks knowingly made a false representation that he was a licensed contractor with the intent to deceive the Rincons and upon which they justifiably relied. Both Mr. and Mrs. Rincon testified that they asked Mr. Hicks whether he was a licensed contractor and that he responded affirmatively. Mrs. Rincon testified that she asked Mr. Hicks several times for his license number, but he continuously made excuses for not providing it to her. Mrs. Rincon's contemporaneous notes corroborate her testimony, which this court finds credible.[81]

At trial, Mr. Hicks was all over the place on this crucial issue. He admitted he was unlicensed, but denied telling the Rincons that he was licensed. He testified that the Rincons never asked if he was licensed, but his testimony is at odds with the affidavit he submitted in connection with his response to a Motion for Summary Judgment filed earlier in this proceeding. In that affidavit, Mr. Hicks attested, "Gabriel Rincon asked if I held a Residential Contractor's License and I informed him that I did not."[82]

Weighing the evidence presented and the credibility of witnesses, the court finds that Mr. Hicks falsely represented to the Rincons that he was a licensed contractor in Louisiana. The next element the court must consider is whether Mr. Hicks intended to deceive the Rincons.

---

[81] Rincon Exh. 8, pp. 370, 374. In Mr. Hicks' post-trial brief, he complained that he did not receive the notebook pages until "six days before the trial, buried in 579 pages of documents." However, Mr. Hicks did not object to the introduction of the notebook pages into evidence, but instead he stipulated to their admissibility.

[82] Adv. 23-1014, P-26-3.

### B. Intent to Deceive

Because defendants rarely admit intent to deceive, courts have found other ways to determine intent.  In *Matter of Selenberg,*[83] the Fifth Circuit held that "[a]n intent to deceive may be inferred from 'reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation.'"[84]  In *Matter of Lawrence,*[85] the Fifth Circuit similarly held:

> When examining a debtor's intent under section 523(a)(2)(A), the Court is required to consider whether the circumstances in the aggregate present a picture of deceptive conduct on the part of the debtor, which betrays an intent on the part of the debtor to deceive his creditors.[86]

This court finds Mr. Hicks knowingly and fraudulently led Mrs. Rincon on about the whereabouts of his license when she asked for his license number.  This showed, in the court's view, his intent to deceive the Rincons.  Stated another way, his actions were consistent with one who hoped to secure the project but knew that being truthful about being unlicensed would almost certainly dash those hopes.

### C. Reliance on the Representation

The next element that the Rincons must prove is that they relied on Mr. Hicks' false representations that he was a licensed contractor.  The United States Supreme Court held in *Field*

---

[83] *Selenberg*, 856 F.3d at 400.

[84] *Id.* at 400 (quoting *In re Acosta*, 406 F.3d 367, 373 (5th Cir. 2005), *abrogated on other grounds by Husky International Electronics, Inc. v. Ritz*, 578 U.S. 355, 136 S.Ct. 1581 (2016)).

[85] *Matter of Lawrence*, No. 21-10103, 2022 WL 118966 (5th Cir. Jan. 12, 2022).

[86] *Id.* at *3 (quoting *G.L. Barron Co., Inc. v. Morris (In re Morris)*, Case No. 13-70043-HDH-7, Adv. No. 13-07003, 2014 WL 550869, at *3 (Bankr. N.D. Tex. 2014)).

*v. Mans*[87] "that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance."[88] The court in *In*

*re Hanna*,[89] explained "justifiable reliance":

> "[J]ustifiable reliance does not impose a duty to investigate unless the falsity of
> the representation is readily apparent or obvious, or there are 'red flags' indicating
> that reliance is unwarranted." *Cohen v. Third Coast Bank, SSB,* No. 1.T3-CV-610,
> 2014 WL 2729608, at *9 (E.D. Tex. June 16, 2014). A creditor has no duty to
> investigate a debtor's representation, unless the "falsity of the representation is
> readily apparent." *Guion v. Sims (In re Sims),* 479 B.R. 415, 425 (Bankr. S.D.
> Tex. 2012) (citing *Field v. Mans,* 516 U.S. [59,] 70-71, 116 S.Ct. 437 [2019]); *see
> also In re Minardi,* 536 B.R. [171,]  187-88 [(Bankr. E. D. Tex. 2015)]
> ("Justifiable reliance does not require a plaintiff to demonstrate reasonableness
> nor does it impose a duty to investigate unless the falsity is readily apparent."). To
> determine whether a creditor justifiably relies on a misrepresentation, the court
> must examine the "circumstances of a particular case and the characteristics of a
> particular plaintiff, [and] not... an objective standard." *In re Sims,* 479 B.R. at
> 425; *see also In re Minardi,* 536 B.R. at 187  (emphasis in original) (citation
> omitted) ("Justifiable reliance requires proof that a plaintiff *actually relied* upon
> the defendant's false representations and that such reliance was justified under the
> circumstances.").[90]

Both Mr. and Mrs. Rincon testified that they would not have hired Mr. Hicks had they known he

was unlicensed.  The court believes their testimony.  Therefore, they proved their reliance on his

false statements about being licensed.  The court finds that their reliance was justifiable because

they were introduced to Mr. Hicks as a contractor by a trusted mutual friend, and Mr. Hicks told

the Rincons he would bring his license to show them.

### D.  Proximate Losses

Finally, section 523(a)(2)(A) requires the Rincons prove they sustained losses as a

proximate result of Mr. Hicks' misrepresentations.  Again, the court holds that the Rincons

---

[87] *Field v. Mans*, 516 U.S. 59, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995).

[88] *Field*, 116 S. Ct. at 446.

[89] *DMM Group, Inc. v. Hanna (In re Hanna)*, 603 B.R. 571 (Bankr. S.D. Tex. 2019).

[90] *Id*. at 590.

sustained losses of $50,884.51, plus $19,300 in attorneys' fees, directly related to their

unfortunate decision to hire Mr. Hicks as their contractor.

### E.   Non-Dischargeability of Attorneys' Fees

Finally, the court must determine whether the attorneys' fees awarded should also be

excepted from discharge.  The United States Supreme Court discussed the treatment of attorneys'

fees under section 523(a)(2)(A) in *Cohen v. de la Cruz*.[91]  It held:

> In short, the text of § 523(a)(2)(A), the meaning of parallel provisions in the
> statute, the historical pedigree of the fraud exception, and the general policy
> underlying the exceptions to discharge all support our conclusion that "any debt ...
> for money, property, services, or ... credit, to the extent obtained by" fraud
> encompasses any liability arising from money, property, etc., that is fraudulently
> obtained, including treble damages, attorney's fees, and other relief that may
> exceed the value obtained by the debtor.[92]

Therefore, when an allowed claim includes attorneys' fees based on fraud, the attorneys' fees

themselves, in this case the $19,300 awarded above, are also nondischargeable under section

523(a)(2)(A).

### F.   Conclusion

The Rincons proved by a preponderance of evidence that Mr. Hicks committed fraud

under both Louisiana law and bankruptcy law.  Specifically, the court finds that the damages

necessary to place the parties back in the position they held beforehand total $50,884.51.

Louisiana law also permits an award of reasonable attorneys' fees in favor of a victim of fraud, in

this case the sum of $19,300.  Therefore, the Rincons are entitled to a money judgment of

$70,184.51.  Finally, because this award of money damages emanates from Mr. Hicks' actual

fraud, it is deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

---

[91] *Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998).

[92] *Cohen*, 523 U.S. at 223.

The court will enter a separate order in the main case regarding the underlying claim and a judgment in the adversary proceeding, including a money judgment, consistent with this ruling.

Baton Rouge, Louisiana, September 9, 2024.

**/s/ Michael A. Crawford**
MICHAEL A. CRAWFORD
UNITED STATES BANKRUPTCY JUDGE